IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAY NANCE, BRETT A. BOEDECKER, as Personal Representative for Susanne N. Boedecker, JOSEPH P. HAYES, PATRICIA HAYES RODOLPH, and THE BROWN CATTLE COMPANY SHAREHOLDERS COAL TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>SECRETARY OF THE INTERIOR OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, DIRK KEMPTHORNE,<br><br>Defendants. | Case No. CV-06-125-BLG-RFC<br><br><br>ORDER RE: PLAINTIFFS' REQUEST FOR ATTORNEY FEES AND COSTS |

## I. INTRODUCTION

On July 2, 2012, after over 35 years of negotiation with and then litigation against the United States, Plaintiffs finally got the coal exchange they had been promised when the Surface Mining Control and Reclamation Act of 1977 ("SMCRA") was passed. They now ask the Court to exercise the discretion granted by 30 U.S.C. § 1270(d) and award them $1,384,000 in attorneys' fees and approximately $234,000 in expert witness fees and costs. Plaintiffs' counsel were retained on contingent-fee basis and that amount represents 25% of the $5,536,000

1

in coal Plaintiffs received through the exchange.

Although attorney fees and costs are more than appropriate in this case, the Court is not permitted to calculate the attorney fees as a percentage of the recovery. The law requires the use of the lodestar method, which calculates the amount of hours reasonably expended multiplied by a reasonable hourly rate. Plaintiffs must therefore provide invoices, reconstructed where necessary, detailing the time spent on the case by each lawyer involved. Considering the significant amount of time spent on this case over several years, as well as the premium hourly rates commanded by the experienced lawyers involved, the lodestar calculation could exceed 25% of the recovery. Upon submission of Plaintiffs' lodestar calculation, the United States can then object to any fees and costs it believes are unreasonable. Plaintiffs can then reply and the Court will rule.

## II. FACTUAL BACKGROUND[1]

Until the recent exchange, Plaintiffs were fee owners of coal in an alluvial valley floor ("AVF") along the Tongue River near Birney, in southeastern Montana. In the mid 1970's they began negotiations to mine and sell the coal. At this same time, Congress was considering banning coal mining in AVFs as part of

---

[1]More details facts are recounted in two prior Orders of this Court. Docs. 23 and 51.

SCMRA. When SMCRA first passed Congress in 1975, Plaintiffs expressed their concern that it would prohibit them from mining their coal and President Ford vetoed it. In 1976, the company that leased Plaintiffs' coal was ready to begin seeking regulatory approval when SMCRA was again under consideration. Although Plaintiffs again voiced their opposition, SMCRA, 30 U.S.C. § 1201 et seq., was enacted in August of 1977. Since SMCRA prohibited the mining of coal in AVF's west of the 100th Meridian, Plaintiffs' coal was precluded from development.

But, due in part to the Congressional testimony by family members of the Plaintiffs, SMCRA also included a coal exchange provision which entitled them to an equal value exchange for coal owned by the United States. The exchange provision, 30 U.S.C. § 1260(b)(5), became known as the "Wallop Amendment" for former Wyoming Senator Malcom Wallop, a primary sponsor of SMCRA. Sen. Wallop assured Plaintiffs that the exchange provision would "take[] care of the private interests of those people who do, in fact have a property which they will never be able to develop under the terms of this bill" and would "say to those who own that [coal]² your government is not taking it from you without providing

---

²Sen. Wallop was specifically referring to landowners along the Tongue River. 123 Cong.Rec. 15755 (May 20, 1977).

you something in return for what it is taking." 123 Cong.Rec. 15755 (May 20, 1977).

Plaintiffs then began the long and ultimately fruitless process of negotiating with the Department of the Interior for the coal exchange they had been promised. In 1986, the State of Montana declared that much of Plaintiffs' coal was in an AVF and could not be mined. Over the next 8 years Plaintiffs' agent continued to negotiate the regulatory environment, submitting a proposal to BLM in December of 1994 to exchange 3,679.5 acres of their coal property for federal coal. In June of 1997 BLM approved the exchange, but for reasons unknown to the Court, it was never completed.

In September of 1998, Plaintiffs contacted Sen. Max Baucus and Rep. Rick Hill, advising them of the inability to negotiate an equitable exchange and urging them to pursue a legislative solution. Nothing came of this either.

The process essentially started over in 2000. After a few more years of appraisals and negotiation with the BLM, in June of 2003, the parties agreed to trade Plaintiffs' coal for federal coal with a value of $15 million. Although Plaintiffs and BLM considered this to be on the low end of what the coal was worth, Plaintiffs were exhausted with the process and just wanted to realize some value from their property. But the DOI converted this exchange into a $15 million

cash payment and nothing more came of it.

Plaintiffs again contacted their representatives, this time Sen. Conrad Burns, who wrote to then Secretary of the Interior Gale Norton in June of 2005 explaining Plaintiffs' decades-long struggle to realize the value of their property. In December of 2005, Chad Calvert, the Deputy Assistant Secretary of the Interior for Land and Minerals wrote Plaintiffs, stating that they had three options: to renegotiate for a coal exchange, litigate, or seek a legislative solution.

Thus, on August 29, 2006, Plaintiffs filed this 30 U.S.C. § 1270 citizen suit to compel the coal exchange they were promised in 1977. Despite the Deputy Assistant Secretary of the Interior's invitation to sue, the United States argued the case should be dismissed as beyond the statute of limitations. But this Court denied the motion (doc. 23) and after some legal issues were sorted out through cross-motions for summary judgment (doc. 51), the parties, with the assistance of a U.S. Magistrate Judge and a Special Mediator, negotiated for four years to complete the coal exchange.

The exchange has now been completed and the only issue remaining for the Court is whether Plaintiffs should be reimbursed for attorneys fees and costs and, if so, to how much are they entitled. Plaintiffs' claim that this case is beyond extraordinary and the only way they could get counsel was through a contingency

fee arrangement. Since the contingency fee arrangement was for 25% of the value of the coal received, they seek an award of $1,384,000, which represents 25% of the $5,536,000 in coal they received, plus $234,000 in expert fees and costs. The United States responds that an award based on a contingency fee has no basis in the law and since Plaintiffs have admitted their counsel did not formally keep track of the hours expended, the request should be denied. But if the Court determines that a fee award is appropriate, the United States believes Plaintiffs should be ordered to provide a detailed, itemized, accurate listing of costs with documentation sufficient to allow the Court to determine if the hours and rates claimed by Plaintiffs' counsel are reasonable. The United States also asks that it be allowed to respond to any itemized list of fees and costs.

## III. ANALYSIS

The following issues are raised by the parties in the briefs regarding Plaintiffs' request for attorney fees and costs: (1) is an award of fees and costs to Plaintiffs appropriate; (2) if so, is the amount of fees based on the lodestar calculation or a contingency fee; (3) can Plaintiffs claim fees for the litigation only or can they claim fees before suit was filed and for Court of Claims taking suit; and (4) are Plaintiffs entitled to any enhancements of the lodestar calculation.

First, the Court feels very strongly that awarding fees and costs is

appropriate in this case. SCMRA provides:

> The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

30 U.S.C. § 1270(d).[3]

In 1977, a United States Senator promised Plaintiffs that the enactment of SCMRA would not take their coal without providing them something in return. Twenty-five frustrating years later Plaintiffs negotiated a $15 million deal that the United States did not follow through with. Then, a couple years later, when a Deputy Assistant Secretary of the Interior gave them the option of suing to compel

---

[3] Title 30 U.S.C. § 1270(d) is different from other "where appropriate" attorney fee provisions in that it does not expressly require the fee to be "reasonable." *See e.g.* 20 U.S.C. § 1270(f)("Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter may bring an action for damages (including *reasonable* attorney and expert witness fees) only in the judicial district in which the surface coal mining operation complained of is located."); 42 U.S.C. § 7604(d)(Clean Air Act) ("The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including *reasonable* attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."); 42 U.S.C. 21 6972(e) (Solid Waste Disposal Act) ("The court, in issuing any final order in any action brought pursuant to this section or section 6976 of this title, may award costs of litigation (including *reasonable* attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."); 33 U.S.C. § 1665(d) (Clean Water Act) (The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including *reasonable* attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."). In any event, the Supreme Court has said that the benchmark in statutory fee cases is reasonableness, *Delaware Valley Citizen's Council,* 478 U.S. at 562, and no cases interpreting § 1270(d) have relied on (or even noted) the lack of the word "reasonable" in applying the statute.

a coal exchange, the United States tried to dismiss the suit on grounds that the statute of limitations had passed. Undeterred, the United States raised the statute of limitations again on summary judgment. Finally, although Plaintiffs have now received something for the coal that was rendered useless by SMCRA, they received about 1/3 of what the parties believed the coal was worth ten years ago.

Plaintiffs did not get everything they hoped, but the history of this case tells us they would still have nothing if they had not filed this suit. Accordingly, Plaintiffs have had at least some degree of success and the Court's sense of equity counsels that an award of litigation expenses is more than appropriate. *Ohio River Valley Environmental Coalition, Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 413 (4th Cir. 2007) (SMCRA authorizes a fee award "to any party, whenever the court determines such award is appropriate," 30 U.S.C. § 1270(d), and this language authorizes fee awards only when the claimant achieves "some degree of success on the merits.").

Second, although Plaintiffs are entitled to an award of attorney fees and costs, the Court has thoroughly reviewed the cases addressing awards of attorney fees under fee shifting statutes such as 30 U.S.C. § 1270(d) and has found no basis in the law for awarding Plaintiffs' attorney fees based upon the amount that counsel are entitled to under their contingency fee agreement. Plaintiffs cite *In re General*

*Motors Corp. Pick-Up Truck Fuel Tank Products* for the proposition that the district court has discretion to choose between the lodestar and the percentage-of-recovery method in awarding attorney fees. 55 F.3d 768, 820-21 (3d Cir. 1995). But the fee award in that case was part of the settlement contract to a class-action lawsuit, not a statutory fee case, and the court recognized that the lodestar method is generally regarded as the appropriate method for statutory fee shifting cases like this one. 55 F.3d at 819, 821. Plaintiffs also note that the BLM believes the purpose of the exchange provision is to make private parties whole–meaning to place them in the same position they would have been absent SMCRA, doc. 36-1, p.3–and that they cannot be made whole until they recover all of their attorney fees and costs. Plaintiffs further argue that the guiding principle behind attorney fee awards is reasonableness and that the United States has not argued their request for $1,384,000 in attorney fees is unreasonable. In the Court's view, it is not.

Regardless, twenty years ago the Supreme Court noted it had rejected the contingent-fee model in favor of the lodestar model for fee awards in statutory fee cases even though the lodestar model generally results in a larger award. *City of Burlington v. Dague,* 505 U.S. 557, 565-66 (1992). The Supreme Court has "directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful

9

claims," *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) *citing Hensley v. Eckerhart,* 461 U.S. 424 (1983), and has repeatedly said the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id., quoting Blum v. Stenson*, 465 U.S. 886, 888 (1984). This "lodestar calculation" can then be adjusted by other factors. *Id.* Significantly, the Supreme Court has "never suggested" a different approach where the prevailing party's attorney was retained through a contingency fee agreement–rather since the 1983 *Hensley* decision the Court has adopted the lodestar approach as the "centerpiece of attorney's fee awards." *Id.* Although it appeals to this Court's sense of equity and would certainly save everyone a lot of work, the Court cannot calculate attorney fees based on the contingent-fee agreement.

Third, although Plaintiffs do not seek fees and costs incurred in the Court of Federal Claims, before the Interior Board of Land Appeals, or in acquiring full title to the land through the partition action (*see* doc. 109), they do seek attorney fees and costs for events prior to the filing of this lawsuit in August of 2006. Doc. 125, p. 7. Plaintiffs note they spent $160,771.38 in attorney fees trying to compel the coal exchange from 2000 to 2006 alone. The United States correctly notes that it is difficult at this time to discern what fees and costs are compensable because

Plaintiffs have not supplied itemized invoices.

Section 1270(d) authorizes the Court to award "costs of litigation (including attorney and expert witness fees) ..." The Fourth Circuit has held the phrase "costs of litigation" refers to costs of litigating a citizen suit, and not costs of pursing separate administrative remedies. *Ohio River Valley Environmental Coalition, Inc.,* 511 F.3d at 418. That said, where the "administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees," fees and costs are recoverable. *Id., citing Sullivan v. Hudson,* 490 U.S. 877, 888 (1989). The question is whether the time spent by Plaintiffs' counsel in the administrative arena was necessary to produce the coal exchange. *Id., citing Pennsylvania v Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546m 559 (1986). At this point, it would seem that fees and costs incurred prior to the filing of this lawsuit would not be compensable, but Plaintiffs can argue otherwise if they can document expenses that they believe were necessary to compel the exchange.

Finally, while there may be other reasons for an enhancement to the lodestar calculation, the fact that Plaintiffs' retained their counsel on a contingent-fee basis is not one of them. *City of Burlington,* 505 U.S. 565-67. Although *City of Burlington* did not apply § 1270(d), it applied statutes with nearly identical

language and the opinion uses broad language that leaves no room for distinguishing § 1270(d) from the fee-shifting provisions of the Solid Waste Disposal Act (42 U.S.C. § 6972(e)) and Clean Water Act (33 U.S.C. § 1365(d)) at issue in that case. Plaintiffs should resubmit arguments for enhancing the lodestar calculation in the brief they submit with their invoices and lodestar calculations.

## IV. ORDER

Accordingly, within 30 days Plaintiffs shall provide a detailed, itemized, and reconstructed where necessary, listing of costs, together with a brief addressing the reasonableness of their request and any remaining legal issues, consistent with this Order. The United States may respond within 20 days of the Plaintiffs' filings and Plaintiffs may then reply within 10 days of any response by the United States.

The parties are advised to file a joint motion for a settlement conference if they believe the services of a United States Magistrate Judge would be helpful in resolving this matter.

**SO ORDERED.**

Dated this 26th day of February, 2013.

*/s/ Richard F. Cebull*_____
Richard F. Cebull
United States District Judge