IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAY NANCE, SUSANNE N. BOEDECKER, JOSEPH P. HAYES, PATRICIA HAYES RODOLPH, and THE BROWN CATTLE COMPANY SHAREHOLDERS COAL TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>S.M.R. JEWELL, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendant. | CV-06-125-DLC-RKS<br><br>**FINDINGS AND RECOMMENDATION TO AWARD ATTORNEY FEES TO PLAINTIFFS** |

**I. Synopsis**

Plaintiffs are entitled to attorney fees. Decades of stonewalling by the Defendant forced Plaintiffs to litigate a land transfer that was their statutory right. Plaintiffs should be awarded $1,483,449.12 in fees and costs. That amount represents appropriate rates for the claimed hours. In lieu of a multiplier, no reduction is applied to the claimed hours despite poor documentation and the inclusion of non-compensable work.

1

## II. Jurisdiction

Plaintiffs initiated the case in United States District Court for the District of Montana, Billings Division. Doc. 1. It is a "Citizens Suit" to compel compliance with 30 U.S.C. § 1260(b)(5). The district court has jurisdiction pursuant to 30 U.S.C. §1270. Venue in the Billings Division is proper because the case concerns a coal tract in Rosebud County, Montana. Local Rule 1.2(c)(1). This case is assigned to District Judge Dana L. Christensen, who referred it to the undersigned for Findings and Recommendations for the remaining proceedings. Doc. 132.

## III. Status

This case was Plaintiffs' final, arduous, but ultimately successful effort to compel the United States to compensate them for coal rendered unusable by statute in 1977. United States District Judge Richard F. Cebull granted partial summary judgment in favor of Plaintiffs in 2008. Doc. 51. Plaintiffs prevailed against one defendant via default judgment, Doc. 109. The remaining parties settled the remaining claims in July 2012. Cod. 118.

Plaintiffs then moved for attorney fees, specifically requesting a contingent-fee type award consisting of 25 percent of the $5, 536,000 value of the coal tract they obtained. Doc. 121. Judge Cebull held that Plaintiffs are entitled to attorney fees, but that the fees must be calculated using the "lodestar" approach rather than

a percentage of recovery. Doc. 126. Judge Cebull ordered the parties to submit briefs on the lodestar calculations, and they have done so. Docs. 129, 136, 139, and supporting exhibits. When Judge Cebull retired in April 2013, this case was reassigned to United States District Judge Dana L. Christensen and referred to the undersigned for all further proceedings. Doc. 132.

## IV. Standards

In a citizen suit brought under the Surface Mining Control and Reclamation Act, the court may award costs of litigation, including attorney fees, to any party. 30 U.S.C. 1270(d). To calculate attorney fees in statutory fee cases like this one, the United States Supreme Court has directed lower courts to use the "lodestar" method. *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

**Lodestar**

The "lodestar" method multiplies the prevailing billing rates by the hours reasonably expended on successful claims. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). That total can then be adjusted if warranted under the circumstances of the case. *Id*.

**Billing rates**

An attorney's hourly rates "are to be calculated according to the prevailing

3

market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The party seeking fees has the burden of proving the reasonableness of the claimed rates. *Id*. Rates must be based on the attorney's "experience, skill, and reputation." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g*. Determination of a reasonable hourly rate is not made by reference to rates actually charged the attorney, but through consideration of the going rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id*.

Attorney fees awarded against the United States must be based on market rates when the work was performed, not when the fees are awarded. *N.W. Coalition for Alternatives to Pesticides v. Browner*, 965 F.Supp. 59, 66 (D.D.C. 1997); *Library of Congress v. Shaw*, 478 U.S. 310 (1986).

**Reasonable hours**

The party seeking fees bears the burden of submitting detailed time records justifying the hours claimed. *Chalmers*, 796 F.2d at 1210. Contemporaneous records of hours worked are preferred in the Ninth Circuit. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). It is permissible to base a fee request on reconstructed records developed from litigation files, but doing so may "provide the district court with a reason to reduce the fee." *Id*.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court further explained the standard for hours claimed:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

461 U.S. at 434 (emphasis in original, internal citations omitted).

**Successful claims**

The Surface Mining Control and Reclamation Act authorizes a fee award "to any party, whenever the court determines such award is appropriate." 30 U.S.C. § 1270(d). As Judge Cebull noted in his Order authorizing fees, the Fourth Circuit has held this language authorizes fee awards only when the claimant achieves "some degree of success on the merits." *Ohio River Valley Environmental Coalition, Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 418 (4th Cir. 2007); Doc. 126 at 8.

**Extra-litigation costs**

The "costs of litigation" typically include only those expenses of litigating

an actual lawsuit, not costs associated with pursuing separate administrative remedies. *Ohio River Valley,* 511 F.3d at 418; Doc. 126 at 11. However, the costs of administrative proceedings may be recoverable if the "administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing fees." *Sullivan v. Hudson,* 490 U.S. 877, 888 (1989). Put another way, administrative proceeding costs are recoverable if the proceedings were "necessary to the attainment of adequate relief." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558 (1986) *supplemented,* 483 U.S. 711 (1987).

**Multiplier**

There is a strong presumption that a lodestar calculation is reasonable without an enhancement. *Perdue v. Kenny A. ex rel. Winn.,* 559 U.S. 542, 554 (2010). The party seeking an enhancement has the burden to prove it is appropriate. *Id. at 553.* This requires "specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Id* at 554. An enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. *Id.* Therefore, the novelty and complexity of a case do not usually justify an enhancement, because those factors influence the billable hours. *Id.* The quality of an attorney's performance also does not justify an enhancement

since that is presumably reflected in the attorney's hourly rate. *Id.* That is the case here.

*Perdue* established three situations in which an enhancement may be appropriate:

1. Where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation.

2. Where the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted.

3. Where the attorney's performance involves exceptional delay in the payment of fees.

*Id.* at 555-56.

## V. Facts[1]

Since at least the 1970s, Plaintiffs owned coal in an alluvial valley floor along the Tongue River near Birney, in southeastern Montana. In the mid-1970s, they began negotiations to mine and sell the coal. Around the same time, Congress was considering legislation that would prohibit mining certain alluvial valley floor coal, including Plaintiffs' 3,679-acre tract. Plaintiffs expressed concern about the devaluation of their coal, and Congress responded by amending the proposed

---

[1] These facts are adopted from Judge Cebull's Order on Attorney Fees, Doc. 126 at 2-6, except as otherwise noted.

legislation – the Surface Mining Control and Reclamation Act – so that it entitled affected coal owners to exchange their coal for equally valuable coal owned by the United States. The Act passed in 1977.

The promised exchange, however, was not forthcoming. Plaintiffs negotiated with the Bureau of Land Management fruitlessly for the following decades. At least twice, they reached agreements, but those agreements went unfulfilled. They commenced the present lawsuit in 2006, which finally – after six more years of litigation – prompted the exchange. Plaintiffs received coal worth $5,536,000.

Plaintiffs sought attorneys fees, which Judge Cebull authorized in no uncertain terms. However, Judge Cebull concluded that fees must be calculated using the lodestar approach, rather than as a percentage of the value recovered. He ordered Plaintiffs to provide a "detailed, itemized, and reconstructed where necessary, listing of costs." Doc. 126 at 12.

Plaintiffs provided the listing and brief in support, contending they are entitled to costs and fees as follows:

- 3,360.4 hours of attorney fees

- At a rate of $500 for 917.2 hours worked by lead attorney A. Clifford Edwards

- At a rate of $300 for the remaining hours, worked by six other

attorneys in the Edwards Law Firm

- Multiplied by 50 percent in consideration of the complexity, risk, and eventual success of the case

- For a total of $1,787,340 in attorney fees

- And litigation costs of $180,384. 74

- Along with pre-litigation costs of $111, 504.38

- For a total of $2,079,229.12.

**VI. Analysis**

It is impossible to precisely calculate fees and costs in this case, which is based on a decades-long dispute fought on many fronts, and presented now based on reconstructed hours. Nevertheless, the determination must be objective and reasoned so that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue*, 559. U.S. at 552. The undersigned will consider each element of the lodestar calculation to fashion an award that meets these criteria and remains reasonably consistent with Judge Cebull's order authorizing the award of costs.

**Billing rate**

Plaintiffs encourage the court to calculate attorney rates using the Seventh Circuit's test: "what the attorney could earn from paying clients." Doc. 129 at 9,

citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). But this court is bound by Ninth Circuit precedent, which holds that a court is to determine reasonable rates based on the experience, skill, and reputation of the attorney requesting fees. *Chalmers*, 796 F.2d at 1210.

Plaintiffs contend they should recover $500 per hour for A. Clifford Edwards' work, and $300 per hour for each of the remaining six attorneys' work. Plaintiffs argue that this is rate the attorneys charge, and support the contention primarily with the attorneys' affidavits. Doc. 129 at 10; 129-1 through 129-7. In their reply brief, Plaintiffs submit an affidavit from attorney James Goetz, who testified that Plaintiffs' claimed rates are reasonable and comparable to those charged by Mr. Goetz ($500/hour) and his "younger partners," with 9-12 years of experience ($275/hour). Doc. 139-8.

Plaintiffs have met their burden to show their claimed rates are reasonable with regard to A. Clifford Edwards. Although $500 per hour is high in Montana, Mr. Edwards' own detailed affidavit and the affidavit of Mr. Goetz establish that Mr. Edwards has the skill, experience and reputation to merit the extraordinarily high rate. The rate requested is a reasonable rate for attorneys of Mr. Edward's qualifications.

Plaintiffs have also met their burden to show that $300 per hour is

reasonable for the remaining attorneys. Again, these rates are high compared to the Montana bar as a whole, but not within the specific market in which they practice. Plaintiffs have shown they are justified by the skill, experience, and reputation of their attorneys. Their ultimate success in this difficult and complicated case is itself strong evidence of their worth.

**Hours billed**

Plaintiffs acknowledge that their claimed hours are not based on contemporaneous recording, but are "reconstructed using phone records, email records, calendars, pleadings, correspondence, expert invoices, client records, and all other information Nance-Brown could locate." Doc. 129 at 8. Plaintiffs conceded that this is a "neighborhood" calculation, but contend that all hours claimed are supported by documentation. *Id*. Plaintiffs argue that they do not have contemporaneous time records because their attorneys' firm primarily operates on a contingent-fee basis, and therefore does not routinely record hours. Doc. 121 at 18.

Defendants contend that the number of hours should be reduced because Plaintiffs have not satisfied their burden of submitting detailed time records to justify the hours. Doc. 136 at 44. Defendants argue that Plaintiffs' explanation for the lack of contemporaneous records – that the firm almost always works on a

11

contingency-fee basis rather than an hourly rate – is feeble because Plaintiffs requested attorneys fees in the Complaint.  Therefore, Defendants argue, Plaintiffs could have and should have properly documented their billable hours throughout the litigation.  Doc. 136 at 44-45.

Defendants have the better argument.  Plaintiffs sought attorneys fees from the beginning of this case.  They should have anticipated the need for documentation. A law firm asking for an award of fees under the framework of this case isexpected to have contemporaneous records verifying the hours.  *Hensley*, 461 U.S. at 434.

Neither Defendants nor the court can meaningfully gauge the accuracy of the reconstructed hours, but there is some reason for skepticism.  For example, Plaintiffs request payment for 25 hours at $500 per hour and 159.8 hours at $300 per hour (totaling $72,940) for "sorting over 30 years of documents."  Doc. 129-9 at 16.  It is unlikely a client would, or should, acquiesce to 185 hours of senior partner rates for sorting documents without substantially greater explanation.  The Supreme Court held in *Hensley* that an adversary doesn't have to, either.

The deficiency in tracking hours will be further considered below.

**Successful claims**

Judge Cebull held that "Plaintiffs have had at least some degree of success,"

sufficient to merit attorneys fees, even though they "did not get everything they hoped for." Doc. 126 at 8. Defendants argue that claims on which Plaintiffs did not succeed should not be compensated. Doc. 136 at 28. Specifically, Defendants contend that costs should not be awarded for Plaintiffs' argument regarding the valuation date of their coal or Plaintiffs' first request for attorneys fees. Doc. 136 at 31.[2]

Although not explicit, Judge Cebull's Order appears to contemplate the award of all litigation costs. See Doc. 126 at 11. Section 1270(d) also refers generally to the "costs of litigation," rather than to the costs of successful claims. It is appropriate to award all reasonable costs of litigation, rather than parsing those costs on a motion-by-motion basis.[3] This is particularly true here, since the defendant is so responsible for the protracted and extensive litigation. Plaintiffs were compelled to litigate by government inaction. They made reasonable claims and litigated them in good faith. They are entitled to all costs of litigation.

**Extra-litigation costs**

Judge Cebull's Order stated that "it would seem that fees and costs incurred prior to the filing of this lawsuit would not be compensable, but Plaintiffs can

---

[2]Defendants argue in the same section of their brief that costs for miscellaneous expenses, primarily meals, should not awarded. That argument is addressed elsewhere in this order.

[3]It's worth noting that Plaintiffs' motion for attorney fees was, in fact, successful.

13

argue otherwise if they can document expenses that they believe were necessary to compel the exchange." Doc. 126 at 11. Plaintiffs did argue otherwise, seeking costs related to: 1) a request for documents from the federal government, Doc. 139 at 22; 2) litigation in the Court of Federal Claims, Doc. 129 at 12; 3) pursuing legislative remedies, Doc. 139 at 24; 4) protests to the administrative exchange, Doc. 139 at 25; and 5) Interior Board of Land Appeals proceedings, Doc. 129 at 10.

Defendants argue that Plaintiffs are not entitled to costs for activities outside of litigation because they were not essential to the outcome of this case. Doc. 136 at 23.

Each activity merits some discussion:

<u>Interior Board of Land Appeals proceeding and administrative protest</u>. Surface owners of the coal tract that was being transferred to Plaintiffs objected to the transfer. Plaintiffs intervened in the case. They did so to protect what they had worked so hard to achieve in this case, and the outcome was favorable. The proceeding appears to have been intimately tied to the resolution of the judicial action and necessary to ensure the transfer went through. Plaintiffs are entitled to the costs of responding to protests to the coal exchange and IBLA proceedings.

<u>Court of Federal Claims</u>. Plaintiffs pursued a takings claims in the Court of

Federal Claims, but that claim was unsuccessful. Doc. 129. The takings claim was distinct from the present case. It sought a different remedy, it was not administrative and, considering it was unsuccessful, obviously was not necessary to Plaintiffs' success in this case. The Court of Federal Claims action that was not part of the litigation at issue and does not meet the criteria of *Delaware Valley*. Plaintiffs are not entitled to recover the costs associated with the Court of Federal Claims action.

Document requests. Plaintiffs provide scant facts as to the nature of their request for documents under the Freedom of Information Act. The facts provided do not establish that the request was integral or necessary to the litigation of this case. Docs. 129; 139 at 22-23. Plaintiffs are not entitled to recover for those efforts.

Lobbying costs. Plaintiffs corresponded with Montana's Congressional delegation in pursuit of a legislative solution to their impasse. Plaintiffs' lobbying efforts should not be compensated. Those efforts were not only separate from the litigation of this case, they were outside the judicial system altogether. An unsuccessful lobbying effort cannot be considered part of the "costs of litigation."

Miscellaneous. Defendants complain that "Plaintiffs claim they should recover expenses for a variety of inappropriate items – such as meals." Doc. 136 at

31. Plaintiffs' list of costs (Doc. 129-10) includes only $90.95 in client-related meals, which is neither inappropriate nor material. Defendant's focus on immaterial amounts does not help this process. No other categories appear inappropriate. No "miscellaneous" should be excluded.

Plaintiffs are entitled to costs for some, but not all, of their activities outside of this litigation. Plaintiffs' 63-page spreadsheet of hours, Doc. 129-9, and list of costs, Doc. 129-10, are not broken down by category and do not provide sufficient information to permit a reasonable estimate of hours attributable to the non-compensable activities. Instead the extraneous costs will be considered below among other factors.

**Multiplier**

The second *Perdue* scenario – where the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted – weighs in favor of a multiplier. Plaintiffs' attorneys invested $180,000 in costs throughout the six-year campaign. Doc. 129-10 at 11. The attorney's performance also involves significantly delayed payment, at least seven years after litigation commenced. See *Perdue* 559 U.S. at 555-56.

While these circumstances do not shock the conscious considering the complexity of the issues involved and the deliberate pace of civil litigation in

general, they are outside the norm and must be considered in light of Plaintiffs' prior efforts to effect the land exchange and Defendant's dilatory practice. As Judge Cebull stated, it took Plaintiffs 35 years of negotiation and litigation to get the exchange they were promised by statute. Doc. 126 at 1. Judge Cebull previously referred to the governments tactics as a "shell game into perpetuity." Doc. 23 at 10. Judge Cebull observed that Plaintiffs' long and frustrating ordeal may justify a multiplier, Doc. 126 at 11, and the undersigned agrees.

However, a court may also reduce a lodestar calculation when the hours are not sufficiently documented. *Hensley*, 461 U.S. at 434. Here, the court cannot properly calculate the appropriate hours because Plaintiffs have not sufficiently documented the hours attributable to the extra-litigation efforts, some of which are non-compensable. Additionally, Plaintiffs' claim for hours is only an estimate because Plaintiffs neglected to keep contemporaneous records.

The factors weighing in favor of an increase and those justifying a decrease offset. The lodestar calculation will neither be increased based on the time and money Plaintiffs' attorneys invested in this challenging case, nor decreased to account for Plaintiffs' inclusion of some non-compensable tasks and imprecise documentation.

## VII. Conclusion

Attorneys fees should be awarded to Plaintiffs for all the claimed hours at the requested rates.  Strong facts militate in favor of a multiplier: Plaintiffs have labored for decades simply to recover what they were owed.  Even this litigation went on for six years, at great expense to Plaintiffs and their attorneys.  Equally strong facts counsel for a reduction: Plaintiffs have included costs that are clearly not "costs of litigation" that the 30 U.S.C. § 1270(d) authorizes the court to award.  Even the costs of litigation are not supported by contemporaneous recording, though Plaintiffs knew from the beginning of this case that they would ask the court to award attorneys fees.   These factors in favor of a multiplier and in favor of a reduction offset.

Fees and costs should be awarded as follow:

- Attorney fees for 917.2 hours of work by A. Clifford Edwards, at $500 per hour, totaling $458,600;

- Attorney fees for 2,443.2 hours or work by the remaining attorneys at $300 per hour, totaling $732,960;

- Litigation costs of $180, 384.74;

- Pre-litigation costs of $111, 504. 38

- For a grand total of: **$1,483,449.12**

It is so **ORDERED**.

Dated the 24th day of December, 2013.

Keith Strong
United States Magistrate Judge